UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMANTHA McGRATH, *as administrator of the estate of Michael McGrath, and Individually*,

Plaintiffs,

-v.-

INDUSTRIAL WASTE TECHNOLOGIES and JASON SYKES,

Defendants.

20 Civ. 2858 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

The case stems from a tragic accident that resulted in the death of a motorcyclist.  On December 6, 2019, Plaintiff Samantha McGrath, in her capacity both as administrator of the estate of the decedent, Michael McGrath, and as an individual, commenced an action in New York State Supreme Court, Bronx County, against Defendants Industrial Waste Technologies and Jason Sykes (collectively, "Defendants").[1]  On April 9, 2020, Defendants removed that action to this Court on the basis of diversity jurisdiction, contending that all Defendants are citizens of the State of New Jersey; that Plaintiff is a citizen of the State of New York; and that the threshold jurisdictional amount is satisfied. Plaintiffs now seek leave to amend the Complaint to join an additional defendant who is alleged to be a New York citizen, and to remand the action to New York State Supreme Court.  For the reasons stated below, Plaintiffs'

---

[1]     The Court recognizes that Ms. McGrath is one person with two roles in this litigation. However, adopting the convention used by the parties, it will refer to "Plaintiffs" in the plural.  References to "Plaintiff" in the singular are to Ms. McGrath, and are designed to distinguish her from the decedent, Michael McGrath.

motion is granted.  The Court recognizes that granting Plaintiffs' motion to amend the Complaint will destroy diversity jurisdiction.  Therefore, this case will be remanded to New York State Supreme Court.

## BACKGROUND[2]

### A.    Plaintiffs' Complaint

On December 6, 2019, Plaintiffs commenced an action in New York Supreme Court, Bronx County, against Industrial Waste Technologies and Jason Sykes.  (*See* Compl.).  Defendants filed their Answer on December 26, 2019.  (Brown Decl., Ex. D).

As noted, Plaintiffs' action arises from a motor vehicle accident that resulted in the death of Michael McGrath (the "Decedent").  (*See generally*

---

[2]    The facts set forth herein are drawn from Plaintiffs' Second Proposed Amended Complaint ("SPAC" (Dkt. #14-2)), Plaintiffs' initial Complaint ("Compl." (Dkt. #5-1)), and Plaintiffs' First Proposed Amended Complaint ("FPAC" (Dkt. #9-12)).  In resolving the instant motion, the Court "accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff."  *Federal Ins. Co.* v. *Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006); *see also Panther Partners Inc.* v. *Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) ("In assessing whether the proposed complaint states a claim, we consider the proposed amendments along with the remainder of the complaint, accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." (internal citations, quotation marks, and alterations omitted)).  The Court will also consider Defendants' Notice of Removal (the "Notice" (Dkt. #5)); the Declarations of Brian M. Brown submitted in support of Plaintiffs' Motion for Remand (cited as "Brown Decl." (Dkt. #9-1) and "Brown Reply Decl." (Dkt. #14)); the Declaration of Sherri A. Jayson submitted with Defendants' opposition to Plaintiffs' motion ("Jayson Decl." (Dkt. #12)); and all the exhibits attached thereto.  *See Arseneault* v. *Congoleum,* No. 01 Civ. 10657 (LMM), 2002 WL 472256, at *6 (S.D.N.Y. Mar. 26, 2002) ("The Second Circuit ... has said that, on jurisdictional issues, federal courts may look outside [the] pleadings to other evidence in the record, and therefore the court will consider material outside of the pleadings submitted on a motion to remand."), *reconsideration denied,* 2002 WL 531006 (S.D.N.Y. Apr. 8, 2002).

For ease of reference, Plaintiffs' opening memorandum is referred to as "Pl. Br." (Dkt. #9-2); Defendants' opposition memorandum is referred to as "Def. Opp." (Dkt #11); and Plaintiffs' reply memorandum is referred to as "Pl. Reply" (Dkt #14).

Compl.).  Plaintiff Samantha McGrath is the Decedent's daughter and the court-appointed administrator for his estate.  (*Id.* at ¶¶ 2-3).  The Complaint alleges that on September 16, 2019, Decedent was operating a motorcycle, when he was "struck by [a] motor vehicle owned, leased, operated, controlled, and/or maintained by [Industrial Waste Technologies] and operated by [Jason Sykes]." (*Id.* at ¶ 28).  The accident occurred at the intersection of East Tremont Avenue and Waterbury Avenue in the Bronx, New York.  (*Id.* at ¶ 26). Plaintiffs further allege, among other things, that "Plaintiff's damages and Decedent's injuries, damages, and death, were caused solely by reason of the negligence, recklessness, carelessness, and culpable conduct on the part of [the two Defendants]." (*Id.* at ¶ 30).  In consequence, Plaintiffs seek to recover damages for Decedent's wrongful death and personal injury.  (*Id.* at ¶¶ 29-34, 37-41).

## B.    Defendants' Removal and Evidence of Diversity Jurisdiction

On April 9, 2020, Defendants removed this action from the New York State Supreme Court to this Court on the basis of diversity jurisdiction. (Notice ¶¶ 11-12).  Defendants asserted that this matter fell within the Court's original jurisdiction pursuant to 28 U.S.C. § 1332(a), as this is an action between citizens of different States, and the threshold jurisdictional amount appeared to be satisfied.  (*Id.* at ¶¶ 5-7, 10-12).

The parties do not dispute that both Industrial Waste Technologies and Jason Sykes are domiciled in New Jersey, whereas Plaintiff is a resident of New York State.  (Notice ¶¶ 5-7; Compl. ¶¶ 4, 6, 13).  Industrial Waste Technology

"is a New Jersey corporation with its principal place of business and nerve center located in New Jersey." (Notice ¶ 6). And Jason Sykes "resid[es] in and [is] a citizen of the State of New Jersey." (*Id.* at ¶ 7).

Plaintiffs' Complaint alleges that Plaintiff McGrath is a resident of the State of New York, and that Decedent resided in the State of New York until his death. (Compl. ¶¶ 4-5). In support of removal, Defendants further submitted Plaintiffs' Bill of Particulars reflecting Plaintiff McGrath's domicile (Notice, Ex. D), and observed that the Decedent's estate is located in Bronx County, New York (*id.* at ¶ 5).

## C.   Plaintiffs' Efforts to Amend and the Instant Motion

Plaintiffs seek to amend their Complaint to join Carol Salera, a New York resident, as a third defendant in this action. (Pl. Br. 1). The proposed joinder of a non-diverse party would leave the Court without diversity jurisdiction. As such, Plaintiffs have moved to remand the case to state court pursuant to 28 U.S.C. § 1447(e). (*Id.*).

Plaintiffs have explained that they learned of Salera's identity and her role in the collision following the initiation of their action in state court, and before Defendants filed their Notice of Removal. (Brown Decl. ¶ 19). Specifically, Salera was first identified during the February 20, 2020 deposition of Detective Matthew Center, the lead investigator of Decedent's accident. (*Id.*). In his deposition, Detective Center identified Salera as present when the accident occurred at the intersection of East Tremont Avenue and Waterbury Avenue. (*Id.*, Ex. E at 112:22-113:9). Shortly before the accident, Salera was

4

in the first car stopped at a red light facing west on East Tremont Avenue.  (*Id.* at ¶ 14).  As the Decedent approached the intersection, the traffic light turned green.  (*Id.* at ¶ 15).  Salera did not immediately proceed through the intersection, but instead yielded the right of way to Defendant Sykes, who made a left turn and collided with Decedent.  (*Id.* at ¶¶ 15-16; *see also* Jayson Decl. ¶¶ 17-18).

Plaintiffs submit that when they spoke with Detective Center prior to his deposition, in January 2020, he had initially identified a different individual in Salera's position at the accident.  (Brown Reply Decl. ¶ 3).  At the time, Plaintiffs sought to enter into a stipulation with Defendants to add that individual's name to the Complaint, but did not receive any response from Defendants.  (*Id.* at ¶¶ 4-5).  Following Detective Center's deposition on February 20, 2020, in which he confirmed Salera's identity, Plaintiffs' counsel drafted a motion to amend their Complaint to include Salera "with the intention to file" the document in New York State Supreme Court.  (Brown Decl. ¶¶ 19-20; Brown Reply Decl. ¶ 10).

As it happened, Plaintiffs' intended filing was delayed due to the ongoing COVID-19 pandemic.  On March 22, 2020, the Chief Administrative Judge of the New York State Unified Court System issued Administrative Order 78/20, which halted all court proceedings in New York that did not involve "essential matters."  (Brown Decl., Ex. F).  Plaintiffs claim that, due to this Administrative Order, they were unable to submit their amended complaint prior to Defendants' filing of their Notice of Removal.  (*Id.* at ¶ 21).

Following Defendants' removal to this Court on April 7, 2020, Plaintiffs contacted Defendants to request consent for voluntary remand fifteen days later. (Brown Decl. ¶ 10). Plaintiffs' request was rejected. (*Id*.). On May 8, 2020, Plaintiffs then filed their motion to remand the case to New York State Supreme Court, Bronx County, pursuant to 28 U.S.C. § 1447(e). (Dkt. #9). Plaintiffs enclosed with their motion their First Proposed Amended Complaint, which alleged that Salera "was the operator of a vehicle at the intersection of East Tremont Avenue and Waterbury Avenue." (FPAC ¶ 27). The First Proposed Amended Complaint further alleged that Salera's "violation of the applicable laws, statutes, ordinances, rules and regulations" caused Plaintiff's damages and Decedent's injuries, damages, and death. (*Id*. at ¶¶ 32, 41).

Defendants filed their opposition to Plaintiffs' motion on June 11, 2020 (Dkt. #11-12), and Plaintiffs filed their reply papers on June 25, 2020 (Dkt. #14). Plaintiffs' reply briefing enclosed a Second Proposed Amended Complaint, which provided further allegations regarding Salera's role in the collision that resulted in Decedent's death. Plaintiffs' Second Proposed Amended Complaint alleges that Salera's vehicle was "the first car in the line of vehicles stopped at the [i]ntersection" prior to the accident, and that "although the traffic signal turned from red to green, [Salera] did not drive into or through the intersection." (SPAC ¶¶ 16, 19). "Seizing upon [Salera's] inaction after the traffic signal turned from red to green, [Sykes] ... turned left without the right-of-way." (*Id*. at ¶ 20). Plaintiffs allege that due to Salera's "failure to obey the traffic signal after it turned from red to green during peak rush hour, and

6

[Sykes's] improper left turn," Decedent collided with Sykes's vehicle, resulting in his injuries and death.  (*Id.* at ¶ 21).

Following Plaintiffs' filing of their reply papers, Defendants submitted a request for leave to file a sur-reply on the same day. (Dkt. #15).  Defendants argued, among other things, that Plaintiffs' submission of a second Proposed Amended Complaint in their reply briefing was improper.  (*Id.* at 2-3).  Plaintiffs opposed Defendants' application on June 29, 2020 (Dkt. #16), and the Court denied Defendants' request the same day (Dkt. #17), though it considered the substantive arguments made in Defendants' submission.  As such, the motion is fully briefed and ripe for review.[3]

## DISCUSSION

### A.   Applicable Law

#### 1.   Statutory Bases for Removal and Remand

"[F]ederal courts are courts of limited jurisdiction and, as such, lack the power to disregard such limits as have been imposed by the Constitution or

---

[3]     While Plaintiffs' application is framed as a motion for remand, because Plaintiffs sought leave to file a First Proposed Amended Complaint in a format enclosed with their moving papers (*see* Pl. Br. 1; *see generally* FPAC), and subsequently sought leave to file a Second Proposed Amended Complaint in a format enclosed with their reply papers (*see generally* SPAC), the Court will construe Plaintiffs' application as both a motion for leave to amend the Complaint and a motion for remand.

Moreover, since "an amended complaint ordinarily supersedes the original, and renders it of no legal effect," *see Shields* v. *Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Int'l Controls Corp.* v. *Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014 (1978)), the Court will consider Plaintiffs' Second Proposed Amended Complaint as the operative pleading.  As Defendants maintain that the Second Proposed Amended Complaint fails to cure the deficiencies of Plaintiffs' First Proposed Amended Complaint (*see* Dkt. #15 at 3), the Court will consider both the arguments raised in Defendants' opposition briefing as well as their subsequent letter submission, as applicable.

Congress." *Purdue Pharma L.P.* v. *Kentucky,* 704 F.3d 208, 213 (2d Cir. 2013) (internal quotation marks omitted).  "Congress has granted district courts original jurisdiction over cases in which there is a federal question, *see* 28 U.S.C. § 1331, and certain cases between citizens of different states, so long as the requirements of complete diversity and amount in controversy are met, *see* 28 U.S.C. § 1332." *Id.*

Pursuant to 28 U.S.C. § 1441(a), a party may remove a state court action to federal court if the action could originally have been commenced in federal court.  28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").  As relevant here, district courts have original jurisdiction over cases "between … citizens of different states," where the amount in controversy exceeds $75,000.  *Id.* § 1332(a).  In turn, "a district court must remand [an] action to state court if it determines that it lacks subject matter jurisdiction."  *Qadar* v. *Citibank,* 927 F. Supp. 2d 86, 87 (S.D.N.Y. 2013) (citing 28 U.S.C. § 1447(c) and *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 488 F.3d 112, 121-22 (2d Cir. 2007)).

Due to the "congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts

against removability." *Purdue Pharma L.P.*, 704 F.2d at 213 (quoting *Lupo* v. *Human Affairs Int'l, Inc.,* 28 F.3d 269, 274 (2d Cir. 1994)). On a motion to remand, "the defendant bears the burden of demonstrating the propriety of removal." *Cal. Pub. Employees' Ret. Sys.* v. *Worldcom, Inc.,* 368 F.3d 86, 100 (2d Cir. 2004) (citation omitted). As pertinent here, when an action is removed on the basis of diversity, the party invoking jurisdiction bears "the burden of establishing that the requirements for diversity jurisdiction [are] met[,]" *Mechlenbacher* v. *Akzo Nobel Salt, Inc.,* 216 F.3d 291, 296 (2d Cir. 2000), at the time of removal, *Vera* v. *Saks & Co.,* 335 F.3d 109, 116 n.2 (2d Cir. 2003) ("[W]e generally evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed."). Defendants must establish that Plaintiffs and Defendants are citizens of different states, *see* 28 U.S.C. § 1332(a), and that there is "a reasonable probability" that the claim exceeds the sum or value of $75,000, *see Colavito* v. *New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006).

### 2. Joinder of Non-Diverse Parties Following Removal

28 U.S.C. § 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." The Court has discretion to permit a proper party to be joined, even if the citizenship of that party will destroy diversity and require the action to be remanded. *See, e.g., Briarpatch Ltd., L.P.* v. *Pate,* 81 F. Supp.

2d 509, 515 (S.D.N.Y. 2000) ("The decision whether to admit the new parties is within the sound discretion of the trial court.").

When determining whether to permit joinder and remand a case, district courts engage in a two-part analysis. First, joinder and remand must satisfy Federal Rule of Civil Procedure 20, which governs permissive joinder of parties. *Nazario* v. *Deere & Co.,* 295 F. Supp. 2d 360, 363 (S.D.N.Y. 2003). As relevant here, Rule 20(a)(2) permits joinder of multiple defendants in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true. *See Viada* v. *Osaka Health Spa, Inc.*, 235 F.R.D. 55, 61 (S.D.N.Y. 2006) ("[W]he[n] there has not been a trial and no facts developed during the pretrial discovery phase of the litigation have been presented to the Court for analysis ..., the Court is required to accept the [factual] allegations made by the plaintiffs in their complaint and assume that all the matters alleged by them in the complaint are true and provable.").

Assuming the proposed joinder would satisfy Rule 20, courts in this District permit "joinder which destroys diversity only when consistent with principles of fundamental fairness as appraised using the following factors: [i] any delay, as well as the reason for delay, in seeking joinder; [ii] resulting

10

prejudice to defendant; [iii] likelihood of multiple litigations; and [iv] plaintiff's motivation for the amendment." *See Nazario*, 295 F. Supp. 2d at 363 (internal citations omitted).  Joinder that destroys diversity will be permitted when the factors weigh in favor of the moving party, *see, e.g., In re Rezulin Prods. Liab. Litig.,* No. 00 Civ. 2843 (LAK), 2002 WL 226409, at *1 (S.D.N.Y. Feb. 13, 2002), though the last of these factors generally "is the most significant consideration in the fairness analysis," *Hudson EFT, LLC* v. *Westchester Surplus Lines Ins. Co.*, No. 20 Civ. 8603 (PAE), 2020 WL 6712203, at *4 (S.D.N.Y. Nov. 16, 2020) (quoting *Grant* v. *Johnson & Johnson*, No. 17 Civ. 3356 (GBD), 2017 WL 6812035, at *3 (S.D.N.Y. Dec. 19, 2017)).

### 3.    Leave to Amend Under Fed. R. Civ. P. 15(a)(2)

The instant motion also requires the Court to consider the standards for amendment of pleadings.  Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Foman* v. *Davis,* 371 U.S. 178, 182 (1962) (instructing that the mandate that leave to amend should "be freely given when justice so requires ... is to be heeded"); *Ruffolo* v. *Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993).  "[I]t is within the sound discretion of the district court whether to grant or deny leave to amend." *Zahra* v. *Town of Southold,* 48 F.3d 674, 685 (2d Cir. 1995).  Moreover, the Second Circuit has held that leave to amend should be denied "only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Aetna Cas. & Sur.*

11

*Co.* v. *Aniero Concrete Co.*, 404 F.3d 566, 603-04 (2d Cir. 2005) (per curiam)
(first citing *Richardson Greenshields Sec., Inc.* v. *Lau*, 825 F.2d 647, 653 n.6 (2d
Cir. 1987), and then citing *Foman*, 371 U.S. at 182); *see also Richardson
Greenshields Sec., Inc.*, 825 F.2d at 653 n.6 ("[M]ere delay ... absent a showing
of bad faith or undue prejudice, does not provide a basis for the district court
to deny the right to amend." (citations omitted)).

## B.     Analysis

Currently, the Court's subject matter jurisdiction is based on diversity of
citizenship.  (*See* Notice ¶¶ 11-12).  However, the parties are in agreement that
if Plaintiffs are granted leave to amend their Complaint to name Salera as a
Defendant, the Court will be divested of such jurisdiction.  (*See* Pl. Br. 1; Def.
Opp. 1).  Plaintiffs proffer that the current motion satisfies all requirements for
joinder and remand pursuant 28 U.S.C. § 1447(e).  (Pl. Br. 3-7).  Defendants
oppose Plaintiffs' request, arguing that joinder should be denied under Section
1447(e) because the motion "defies" the principles of fundamental fairness.
(Def. Opp. 1).  Specifically, Defendants contend that Plaintiffs' motivation for
joinder is to destroy diversity jurisdiction.  (*Id.*).  They further argue that
Plaintiffs should be denied leave to amend, as their proposed amendment
would be futile.  (*Id.* at 3-6).  As set forth in the remainder of this Opinion,
neither argument provides a basis for denying Plaintiffs' motion.

### 1.     Salera May Be Joined as a Defendant

As stated above, when deciding whether to permit joinder and remand a
case, courts first consider Federal Rule of Civil Procedure 20, which governs

12

permissive joinder of parties.  *Nazario,* 295 F. Supp. 2d at 363.  Courts then consider whether joinder is consistent with the "principles of fundamental fairness."  *Id.*  In applying this framework, the Court finds that Salera may be joined as a defendant.

### a.   Joinder Is Permissible Pursuant to Fed. R. Civ. P. 20(a)(2)

Rule 20(a)(2) permits joinder of multiple defendants in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  And in assessing whether these requirements are met, courts must accept the factual allegations in a plaintiff's complaint as true.  *See Viada*, 235 F.R.D. at 61.

Here, joinder is permissible under Rule 20(a)(2).  First, it is clear that Salera is implicated in the same occurrence as the original Defendants — the collision that resulted in the Decedent's death — and that an action including all of the contemplated parties would thus involve common questions of law and fact.  Courts in this District have previously held that allegations of a common underlying accident can satisfy the requirements of Rule 20(a)(2). *See, e.g.*, *Duino* v. *CEM W. Vill., Inc.*, No. 18 Civ. 10249 (CM), 2020 WL 3249214, at *2 (S.D.N.Y. June 16, 2020) ("The right to relief asserted against both … the landlord of the apartment, and … the leaseholder of the apartment, arise from the same alleged fall."); *Rosado* v. *Johnson*, 589 F. Supp. 2d 398, 401 (S.D.N.Y. 2008) (finding that tort claims against participants in vehicle

13

accident involved common questions of fact, including which driver, if either, had the right of way).

Moreover, the Second Proposed Amended Complaint asserts that Decedent's injuries were caused by the negligence of all three proposed Defendants.  (SPAC ¶¶ 25, 31, 39, 45; *see also* Pl. Br. 4 ("Ms. Salera's own failure to obey the New York Vehicle and Traffic Laws also contributed to the subject collision and Decedent's injuries.")).  This necessarily involves questions of law and fact common to all defendants, including the apportionment of fault and liability.  *See Reyes* v. *Nat'l Car Rental Fin. LP and "John Doe,"* No. 99 Civ. 10058 (CSH), 2000 WL 769205, at *2-3 (S.D.N.Y. June 13, 2000) (finding that allegations of vicarious liability and direct liability against car owner and renter arose from same car accident, and involved common questions of law and fact).  Joinder is therefore permissible under Rule 20(a)(2).

### b.   Fundamental Fairness Factors Weigh in Favor of Joinder

Having determined joinder is permissible under Rule 20(a)(2), the Court must next consider whether, as a matter of fundamental fairness, certain factors militate in favor of joinder and remand.  *See Nazario*, 295 F. Supp. 2d at 363.  As noted above, those factors include: "[i] any delay, as well as the reason for delay, in seeking joinder; [ii] resulting prejudice to defendant; [iii] likelihood of multiple litigations; and [iv] plaintiff's motivation for the amendment."  *Id.*  Defendants concede that there is little prejudice to them, but argue that joinder should not be permitted for reasons of undue delay and

14

improper motives.  (Def. Opp. 2-3).  *See M.S.S. Constr. Corp.* v. *Century Sur. Co.*, No. 15 Civ. 2801 (ER), 2015 WL 6516861, at *7 (S.D.N.Y. Oct. 28, 2015) (finding no prejudice where action was in "preliminary stages" and discovery remained ongoing).

The Court first considers any delays in Plaintiffs' request for remand. "Delay in seeking amendment is measured from the date of removal." *Nazario*, 295 F. Supp. 2d at 363.  Defendants removed this action on April 7, 2020. (*See generally* Notice).  Plaintiffs sought to request consent for voluntary remand via telephone on April 22, 2020.  (Brown Decl. ¶ 10).  Once Defendants rejected their request, Plaintiffs then filed the instant motion to remand on May 8, 2020, thirty-one days after Defendants' Notice.  (*Id.*; *see also* Dkt. #9). In *Nazario*, a case relied upon by Defendants, the court found that five months constituted an improper delay in seeking amendment.  *See* 295 F. Supp. 2d at 363 ("[P]laintiff's decision to wait five months to bring this motion [to join defendants] is without justification.").  Here, Plaintiffs reacted fifteen days after the date of removal, and formally brought the instant motion thirty-one days thereafter.  This is Plaintiffs' first motion to the Court, and in that respect the first opportunity for Plaintiffs formally to move the Court.  Nothing in the record suggests that Plaintiffs were dilatory in their request.

The factor primarily in dispute is Plaintiffs' motivation.  "This is the most significant consideration in the fairness analysis." *Grant*, 2017 WL 6812035, at *3.  However, "unless a plaintiff seeks to add a non-diverse party *solely* to destroy the court's basis for diversity jurisdiction, the court is required [if the

other factors are met] to remand the action to state court." *Balfour* v. *Quest Diagnostics Inc.,* No. 11 Civ. 4701 (JSR), 2012 WL 335666, at *2 (S.D.N.Y. Feb. 1, 2012) (quoting *Shorl* v. *Bulk-Matic Transp. Co.,* No. 93 Civ. 6040 (CSH), 1994 WL 363941, at *2 (S.D.N.Y. July 13, 1994)).

Plaintiffs submit that they have intended to name Salera as a defendant since Detective Center's testimony identifying her role in the underlying accident, and thus her potential liability for Plaintiffs' alleged injuries.  (Brown Decl. ¶ 20; Brown Reply Decl. ¶¶ 7-10).  They further explain that their motivation for the amendment is to "join all defendants who may have caused or contributed to their damages to increase the chances of recovery and to expedite litigation." (Pl. Br. 7).  The Court observes that this purported interest in avoiding multiple litigation weighs in favor of joinder.  Granting Plaintiffs' motion would obviate any need for Plaintiffs to commence a separate action in state court against Salera, and would allow all potential claims arising from the underlying accident to be litigated in a single forum.  Permitting joinder and remanding this action thus "eliminates the possibility of multiple ligations and the potential for inconsistent outcomes." *M.S.S. Constr. Corp.*, 2015 WL 6516861, at *8.

Defendants respond that Plaintiffs' explanation is not credible, and assert instead that their "sole motivation" is to "destroy diversity and to seek remand of this case to a more favorable venue." (*See* Def. Opp. 1).  In support, they argue that Plaintiff McGrath "made no attempt to serve or file this motion at any time before removal." (*Id.* at 7).  However, Plaintiffs claim that following

their initial conversation with Detective Center in January 2020, in which he indicated that "a different person as the lead driver stopped at the red light" (Pl. Br. 8), they sought to add this individual to the Complaint prior to the case's removal (Brown Reply Decl. ¶¶ 4-5; *see also id.*, Ex. A).  Upon Detective Center's confirmation of Salera's identity in his deposition the following month, Plaintiffs' counsel drafted a motion to amend their Complaint to include Salera. (Brown Decl. ¶ 20; Brown Reply Decl. ¶ 10).  And the Court recognizes that Administrative Order 78/20 and the related difficulties posed by the COVID-19 pandemic may have contributed to delays in filing the Proposed Amended Complaint.  As such, the Court disagrees with Defendants that Plaintiffs' conduct prior to the filing of the Notice of Removal gives rise to an inference of improper motives.  *See Leifer* v. *JPMorgan Chase Bank, N.A.*, No. 18 Civ. 7477 (PGG), 2020 WL 1130727, at *6 (S.D.N.Y. Mar. 9, 2020) (finding that plaintiff's sole motivation was not to destroy diversity where plaintiff "sought to learn the identity of the Doe Defendants prior to removal … suggesting an intent to name non-diverse defendants and to assert additional causes of action once Doe Defendants were identified").

Defendants further observe that Plaintiffs contemporaneously filed a motion to amend a complaint with a motion to remand, and argue that this too calls into question Plaintiffs' motives.  (Def. Opp. 8).  In support, Defendants cite to *Mraz* v. *JPMorgan Chase Bank, N.A.*, No. 17 Civ. 6830 (ILG), 2018 WL 2075427 (E.D.N.Y. May 3, 2018), where the court indicated that such contemporaneous filing "'all but compel[s]' the inference 'that the complaint

17

was amended with the deliberate purpose of divesting this Court of jurisdiction.'"  *Id.* at *7 (quoting *McGee* v. *State Farm Mut. Auto. Ins. Co.*, 684 F. Supp. 2d 258, 264 (E.D.N.Y. 2009)).  However, in *Mraz*, plaintiffs did not have a credible explanation for the omission of the proposed defendant from the original complaint.  *Id.*  Here, by contrast, Plaintiffs do have a credible explanation:  Salera's identity was not confirmed until after the original complaint was filed.  Where, as here, a plaintiff "discovers new information, subsequent to filing [her] complaint, that warrants the addition of new parties," courts have held that no inference arises that plaintiff was motivated to join the defendant solely to defeat jurisdiction.  *Leifer*, 2020 WL 1130727, at *6 (quoting *Roll On Express, Inc.* v. *Travelers Indem. Co. of Conn.*, No. 09 Civ. 213 (RLM), 2009 WL 1940731, at *6 (E.D.N.Y. July 2, 2009)); *see also Ruiz* v. *Forest City Enter., Inc.*, No. 09 Civ. 4699 (RJD) (MDG), 2010 WL 3322505, at *3 (E.D.N.Y. Aug. 20, 2010).

### 2.    Amendment Is Permissible Under Fed. R. Civ. P. 15(a)(2)

Separately, Defendants argue that the Court should refuse to grant Plaintiffs' leave to amend on the grounds that such amendment would be futile.  (Def. Opp. 3-6).  When determining whether to grant leave to amend, district courts consider: (i) whether the party seeking the amendment has unduly delayed; (ii) whether that party is acting in good faith; (iii) whether the opposing party will be prejudiced; and (iv) whether the amendment will be futile.  *See Foman*, 371 U.S. at 182; *see also Gormin* v. *Hubregsen*, No. 08 Civ. 7674 (PGG), 2009 WL 35020, at *1 (S.D.N.Y. Jan. 6, 2009).  However, leave to amend may

independently be denied "on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact," irrespective of whether undue delay, prejudice, or bad faith is established. *AEP Energy Servs. Gas Holding Co.* v. *Bank of Am., N.A.,* 626 F.3d 699, 726 (2d Cir. 2010) (citing *Milanese* v. *Rust-Oleum Corp.,* 244 F.3d 104, 110-11 (2d Cir. 2001)).

Defendants argue that Plaintiffs' proposed amendment is unduly delayed, in bad faith, and would be futile.  (Def. Opp. 2-3).  The Court has addressed undue delay and bad faith in reference to Plaintiffs' § 1447(e) motion, and now turns to the parties' arguments as to futility.  On this point, Defendants contend that Plaintiffs' amended complaint "fail[s] to state a viable cause of action against proposed defendant Salera" (*id.* at 3-4), as "[i]t neither adds any specific facts of Salera's alleged negligence nor differentiates her alleged negligence from that of [the original Defendants]" (*id.* at 5).[4]

---

[4]    In support of their argument as to the Proposed Amended Complaint's futility, Defendants refer the Court to *Grant* v. *Johnson & Johnson*, No. 17 Civ. 3356 (GBD), 2017 WL 6812035, at *3 (S.D.N.Y. Dec. 19, 2017), where plaintiff's motion for remand was denied as the proposed amended complaint "contain[ed] boilerplate allegations and [was] devoid of any specific allegations."  In *Grant*, the court considered these deficiencies in the context of the joinder analysis under Section 1447(e), rather than in the context of an amendment under Rule 15(a).  *Id.*  And the court determined that such "boilerplate allegations" were evidence of improper motives and accordingly violated principles of fundamental fairness.  *Id.* at *4.  As discussed above, the Court finds no such improper motives here.  Moreover, the proposed amendment at issue in *Grant* included conclusory allegations that failed to explain "each [d]efendant's respective role in causing [p]laintiff's injuries."  *Id.* at *3.  Here, Plaintiffs identify each defendant, and provide some explanation as to each defendant's role with respect to the underlying accident.  (*See* SPAC ¶¶ 24-25, 30-31, 38-39, 44-45).  As such, the Court does not find that this argument compels a different outcome on either its Section 1447(e) or Rule 15(a)(2) analysis.

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente* v. *Int'l Bus. Mach. Corp.,* 310 F.3d 243, 258 (2d Cir. 2002). Here, the Court finds that Plaintiffs have alleged a cause of action against Salera that is sufficiently "plausible on its face." *See Riverhead Park Corp* v. *Cardinale,* 881 F. Supp. 2d 376, 379 (E.D.N.Y. 2012) (quoting *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 570 (2007)). Plaintiffs' Second Proposed Amended Complaint alleges that Decedent's injuries, damages, and death were a "direct legal and proximate result" of "Salera's negligent acts and/or omissions and violation of the applicable laws, statutes, ordinances, rules and regulations, including but not limited to New York Vehicle and Traffic Law § 1110(a)[.]" (SPAC ¶ 45). Such allegations may be sufficient to state a claim of negligence under New York law.

To establish negligence under New York law, a plaintiff must show "[i] the existence of a duty on defendant's part as to plaintiff; [ii] a breach of this duty; and [iii] injury to the plaintiff as a result thereof." *Caronia* v. *Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013) (quoting *Akins* v. *Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)). Under New York law, an unexcused violation of a statutory standard of care, if unexplained, constitutes negligence *per se*, *see Dalal* v. *City of New York*, 692 N.Y.S.2d 468, 469 (2d Dep't 1999), though a plaintiff must still establish "that the statutory violation was the proximate cause of the occurrence[,]" *Dance* v. *Town of Southampton*, 467 N.Y.S.2d 203, 206 (2d Dep't 1983). As such, violations of a standard of care imposed by New York Vehicle and Traffic Law ("VTL") can establish negligence where the other

20

elements of liability are met.  *See, e.g.*, *Polanco* v. *United States*, No. 19 Civ. 1409 (LJL), 2020 WL 6504554, at *13 (S.D.N.Y. Nov. 5, 2020); *Packer* v. *Mirasola*, 681 N.Y.S.2d 559, 559 (2d Dep't 1998).

Plaintiffs allege that Salera, by failing to drive through the intersection when the light turned green, violated VTL § 1110(a), which requires that "[e]very person shall obey the instructions of any official traffic control device applicable to him."  (SPAC ¶ 44; *see also* Pl. Reply 8).  Further, Plaintiffs allege that this violation of the VTL may have proximately caused Decedent's "physical and emotional injuries and damages, conscious pain and suffering, pre-death terror, fear of impending death, and death."  (SPAC ¶ 45; *see also* Pl. Reply 8).  Such allegations may establish that Salera violated a statutory standard of care without explanation, that this breach of duty may have proximately caused the collision between Sykes and Decedent, and that Decedent's injuries were foreseeable under the circumstances.  *See Mahar* v. *U.S. Xpress Enter., Inc.*, 688 F. Supp. 2d 95, 109 (N.D.N.Y. 2010) (finding that plaintiff may have established liability based on defendant's violation of VTL provision); *accord Packer*, 681 N.Y.S.2d at 559.[5]

---

[5]    Defendants argue that Plaintiffs have not established a negligence claim against Salera. (Def. Opp. 3 n.2).  In support, Defendants observe that Detective Center testified that in his opinion, Salera was not a proximate cause of the accident and that she did not violate any provision of the VTL by yielding the right of way to Sykes.  (*Id.*).  Defendants also refer the Court to cases regarding the obligations of a driver with the right of way. (*Id.* (citing *Richardson* v. *Cablevision Sys. Corp.*, 104 N.Y.S.3d 655, 655 (2d Dep't 2019); *M.M.T.* v. *Relyea*, 114 N.Y.S.3d 385, 385 (2d Dep't 2019))).  However, Detective Center's testimony is not properly considered in determining whether leave should be granted under Rule 15(a)(2).  *See Estate of Ratcliffe* v. *Pradera Realty Co.*, No. 05 Civ. 10272 (JFK), 2007 WL 3084977, at *6 (S.D.N.Y. Oct. 19, 2007) ("In deciding whether the proposed amendment is futile, the Court cannot consider evidence that arises from the deposition testimony of fact witnesses[.]").  Moreover, under New York law, even where a plaintiff establishes negligence by a driver with the right of way, other drivers may still

It may be the case that Plaintiffs will "not eventually prevail on their claims" against Salera.  *See Wyant* v. *Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919, 923 (S.D.N.Y. 1995); *see also Rodriguez* v. *Abbott Labs.*, 151 F.R.D. 529, 532 n.3 (S.D.N.Y. 1993) (observing that joint tortfeasors need not be "indispensable parties" but can merely be "permissive parties").  At this pleading stage, however, they have asserted a plausible basis on which to pursue such claims.  The Court accordingly finds that Plaintiffs' proposed amendment to the Complaint would not be futile.

## CONCLUSION

For the reasons set forth in this Opinion, Plaintiffs' motion is GRANTED. The Clerk of Court is directed to docket the Second Proposed Amended Complaint submitted with Plaintiffs' reply briefing (Dkt. #14-2), and to then remand the case to New York State Supreme Court, Bronx County, pursuant to 28 U.S.C. § 1447(c).  The Clerk of Court is further directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:    February 26, 2021
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

be found liable on a theory of contributory negligence.  *See, e.g.*, *Paljevic* v. *Smith*, 799 N.Y.S.2d 139, 140-41 (2d Dep't 2005) (concluding, in case where driver failed to yield right-of-way to second vehicle, that plaintiff raised triable issue of fact as to whether driver of second vehicle was contributorily negligent).